**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO, | ) ) ) | |
| 501 Third Street, NW Washington, DC 20001 | ) ) ) ) | |
| v. | ) ) | Case No. 1:21-cv-01674 |
| UNITED AIRLINES, INC., | ) ) ) | |
| 233 South Wacker Drive Chicago, IL 60606 | ) ) ) | |
| Defendant. | ) ) | |

_____

## COMPLAINT

1.      Plaintiff the Association of Flight Attendants-CWA, AFL-CIO ("AFA" or the "Union") brings this action against Defendant United Airlines, Inc., for violations of the Railway Labor Act, 45 U.S.C. Sections 151 *et seq.* ("RLA" or the "Act").

2.      Federal law governing labor relations in the airline industry strictly prohibits employers from interfering with their employees' collective bargaining representative. 45 U.S.C. § 152, Third and Fourth. This Complaint is necessary because United Airlines has violated, and continues to violate, these provisions with respect to the AFA, which is the certified collective bargaining representative of the United Airlines Flight Attendants. Among other things, United Airlines has attempted to undermine the AFA's role as bargaining representative and to chill union activity through the following actions:

- Unlawfully interrogating Flight Attendants regarding union activities, including the Union's internal grievance handling process, defense strategy, and privileged communications between Flight Attendants and their Union representatives;

- Unlawfully demanding that AFA representatives submit to disciplinary interrogation specifically regarding purely representational matters, under threat of discipline or other reprisal up to and including termination; and

- Unlawfully barring the designated AFA representatives from representing United Airlines Flight Attendants in disciplinary hearings.

3.     This lawsuit is brought to obtain injunctive relief compelling United Airlines to: cease its efforts to coerce information from Flight Attendants regarding union activity; abstain from conducting bad faith investigations of union representatives or from disciplining them for conduct in their capacity as union representatives; treat with the Union's designated representatives for all lawful purposes; cease all practices unlawful under the RLA; and make whole the AFA, and its representatives for injuries suffered as a result of United's unlawful conduct.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 2201.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

6.     Plaintiff Association of Flight Attendants-CWA, AFL-CIO ("AFA" or the "Union"), based in Washington, D.C. is an unincorporated labor organization representing flight attendants throughout the United States, including the Flight Attendants employed by Defendant United. Since the 1940s the AFA, and its predecessor organizations, has been certified by the National Mediation Board as the collective bargaining representative of the United Flight Attendants, pursuant to the Railway Labor Act. The AFA brings these claims on its own behalf and on behalf of its members.

7.     Defendant United Airlines ("United") is a subsidiary of United Airlines Holdings, Inc., a publicly held company based in Chicago, Illinois, and is a global commercial airline.

2

United is a "carrier" as that term is defined in Title II, Sections 201 and 202 of the RLA, 45 U.S.C. §§ 181, 182. United does business in this judicial district.

## FACTS

8.      The AFA and United are parties to a collective bargaining agreement ("CBA" or the "Agreement") which became effective August 28, 2016, which governs the terms and conditions of Flight Attendant employment and provides a process for company investigation and discipline of Flight Attendants. At each step of any such investigation, Flight Attendants are entitled to union representation.

9.      Section 23 of the CBA, "Investigations & Grievances", provides in part:

A. Investigations

> 1. When the Company conducts an investigation which may lead to disciplinary action or discharge, the Flight Attendant shall be entitled to Union representation … and an opportunity to present information relevant to the investigation.
>
> …
>
> 8. A Flight Attendant who has passed the probationary period shall not be disciplined or discharged without just cause.
>
> …

B. Grievance Representation

> 1. The Union will be represented by properly designated Local Executive Council ("LEC") Presidents at each location on the system. LEC Presidents and their designees will be empowered to settle all local grievances or disputes not involving changes in policy or the intent and purposes of this Agreement, at the Step 1 level.

10.      Section 23.G of the Agreement, "Progressive Discipline" provides for such a system for Flight Attendants incurring discipline under United's Working Guidelines and Company policies. The Performance Track includes disciplines as follows:

3

Performance Warning 1:  Duration of 12 months of active service from the date of issuance unless progressed to a higher level.

…

Performance Warning 4:  Duration 24 months of active service from date of issuance unless progressed to Discharge.

11.    Section 23.H of the Agreement, "Disciplinary Letters, Disciplinary Suspensions and Discharges", provides in part:

1. Discipline Not Involving Discharge

…

c. Pursuant to Section 23.C.1 [Grievance Procedure], Step 1, … a Flight Attendant may request a review of any Warning; the Union may request such as review on behalf of the Flight Attendant only if the Flight Attendant specifically so requests.

…

d. The Section 23.C.1, Step 1, hearing shall be a conference between the Manager Onboard Service and/or designee, the supervisor, the Flight Attendant and Association representative and/or witnesses as applicable. With respect to this meeting:

…

(2). Any party may bring to the hearing documents or other evidence, although this is not required.

…

(4). The parties are encouraged to candidly discuss the merits of the Warning.

12.    Section 24 of the CBA, "System Board of Adjustment", provides in part:

H. Representatives/Witnesses

1. Employees covered by this Agreement may be represented at Board hearings by such person(s) as they may choose and designate … Evidence may be presented either orally or in writing or both.

…

4

K. Rights under Railway Labor Act

> Nothing herein shall be construed to limit, restrict, or abridge the right or privileges accorded either to the employees or to the Company, or to their duly accredited representatives, under the provisions of the Railway Labor Act, as amended.

13.     AFA Local Executive Council 21 ("LEC" or "Council 21") is a local level body of the AFA which represents approximately 2,000 United Flight Attendants in the Washington, D.C. metropolitan area's three airports, Washington National Airport ("DCA"), Dulles International Airport ("IAD"), and Baltimore/Washington International Thurgood Marshall Airport ("BWI").

14.     Jill Collins is a United Flight Attendant hired in 1989 and currently based out of the Washington, D.C. area airports. Ms. Collins is the elected Council 21 President and serves as a full-time Union representative. Her Union duties include enforcing the CBA and representing employees in the investigatory and discipline appeal process.

15.     The AFA Constitution, by Article III.C.3.a.(3) regarding Local Council Officers, provides that "The President shall be responsible for the expeditious processing of complaints and grievances of that Council's members and promoting their interests locally in whatever way possible."

16.     Donna Matallana is a United Flight Attendant hired in 1989 and based out of the Washington, D.C. area airports. Ms. Matallana is an appointed LEC Grievance Co-Chair and serves as a generally full-time Union representative. Her Union duties include enforcing the CBA and representing employees in the investigatory and discipline appeal process.

17.     In September 2020, a Washington, D.C. area based United Flight Attendant reported to management that he believed one or more of his co-workers had not abided by certain Company policies and United began an investigation into the matter.

18.     In October 2020, United issued Performance Warnings to two AFA represented Washington, D.C. area based Flight Attendants for alleged misconduct in connection with flights worked in September 2020.

19.     The AFA, including through LEC President Collins and Grievance Co-Chair Matallana, provided representation to the Flight Attendants under investigation by United, contested the findings of the investigations, and through the contractual grievance process challenged the discipline United imposed on the Flight Attendants accused of misconduct.

20.     LEC President Collins and Grievance Co-Chair Matallana's roles in representing these Flight Attendants have included appealing their disciplines, conducting interviews, collecting witness statements and character statements, and gathering information from those under investigation and their co-workers. Ms. Collins and Ms. Matallana carried out these investigations on Union time, in their capacities as AFA representatives, and for the purposes of representing the disciplined Flight Attendants and enforcing the CBA, including the "just cause" discipline clause.

21.     On March 8, 2021, the first appeal hearing for a Flight Attendant disciplined in connection with the September 2020 complaints from a co-worker was held before United Senior Base Manager Janene Bell. The AFA, through LEC President Collins and Grievance Co-Chair Matallana presented evidence on behalf of the disciplined Flight Attendant, including evidence which Ms. Collins and Ms. Matallana had obtained in the AFA's investigation of the matter.

22.     Ms. Bell informed the AFA that United would refuse to take such evidence into consideration on behalf of the employee under investigation. United then indicated that it viewed the documents as potentially the basis for leveling additional disciplines against further Flight Attendants.

23.     During and following the March 8, 2021 appeal hearing, United, through Senior Base Manager Janene Bell, treated LEC President Collins and Grievance Co-Chair Matallana in a hostile manner.

24.     Following the March 8, 2021 appeal hearing, United has interrogated at least three Washington, D.C. area based Flight Attendants to determine the content of their communications with Union representatives regarding matters of Union representation.

25.     United has also informed the AFA that it is investigating the manner in which AFA representatives Collins and Matallana conducted their Union investigations, contending that Ms. Collins and Ms. Matallana may themselves be subject to employment discipline in their capacities as United Flight Attendants for alleged conduct undertaken solely in their capacities as Union representatives. The AFA vehemently objected to this approach and urged United to desist from such unlawful action.

26.     Undeterred, in May 2021, United informed the AFA that it intended to present Ms. Collins and Ms. Matallana with sets of written questions regarding their communications with Flight Attendants undertaken in the context of their Union representation, conduct undertaken in their capacities as Union Representatives, and/or how they obtained their knowledge of the underlying matters leading to the discipline being grieved.

27.     Since late April 2021, United has informed the AFA, orally and by e-mail, that it would refuse to allow LEC President Collins or Grievance Co-Chair Donna Matallana to participate or be present in certain disciplinary hearings for which the AFA has designated them as representatives.

28.     As a result of United's refusal to permit LEC President Collins and Grievance Co-Chair Matallana to participate in or be present for these hearings it has been and continues to be

necessary for the AFA to arrange for AFA representatives from other out-of-state Councils to provide representation.

29.    On June 8, 2021, United submitted to the AFA a set of written questions for Ms. Collins and Ms. Matallana and demanded a response by 2:00 p.m. on June 11, 2021. Specifically, United asked Ms. Collins and Ms. Matallana, through the AFA, to identify all people who they "reach[ed] out to" regarding the co-worker who claimed that the Flight Attendant being investigated had violated United policy, and "what did you ask them" and "why" certain questions may have been asked. United asked why, in the course of representing the Flight Attendant under investigation, certain individuals were allegedly contacted as part of that representation. United further specifically asked "how and when" Ms. Collins and Ms. Matallana learned of some of the information contained in the documents provided at the March 8, 2021 hearing, "what information" they learned, and "why" the union members who provided the information did so when they did. United also asked Ms. Collins and Ms. Matallana to "Describe in detail your conversation[s]" with AFA represented employees concerning information reported to them which was then submitted during the contractual hearing. United indicated that Ms. Collins and Ms. Matallana would be disciplined and/or subject to other unspecified reprisals if they failed to cooperate.

30.    The AFA informed United that it would submit its response to the written questions by June 16, 2021. On that date AFA informed United by letter that it had concluded that the questions to Ms. Collins and Ms. Matallana are directed solely to their actions in their capacity as Union representatives, not in their capacity as employees, and that through such questions United is attempting to illegally solicit the Union's defense strategy and confidential and protected internal union-member communication in violation of the RLA.

8

31.     Nonetheless, United followed through with its plan to interrogate and potentially discipline AFA representatives for their representational conduct. On June 22, 2021, United issued Letters of Investigation ("LOIs") to LEC President Jill Collins and Grievance Co-Chair Donna Matallana, which stated that they will be investigated regarding their conduct during and related to the matter in which they served as union representatives defending a United Flight Attendant from discipline. The LOIs set investigation meetings for June 24 and June 25 for Ms. Collins and Ms. Matallana, respectively. Under the CBA, these LOIs serve as the first stage of the disciplinary process.

## CAUSES OF ACTION

### COUNT ONE – VIOLATION OF RLA SECTION 2, THIRD, 45 U.S.C. § 152, THIRD

32.     The AFA incorporates by reference paragraphs 1-31 as if restated herein.

33.     Section 2, Third of the RLA, 45 U.S.C. § 152, Third governs the designation of employee representatives at RLA-covered air carriers. It provides in part that:

> Representatives … shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives.

34.     By investigating and threatening with discipline AFA representatives Collins and Matallana for engaging in protected representational activity, by demanding the disclosure of communications between Flight Attendants and their AFA representatives regarding representational matters under threat of discipline or other reprisal, and by refusing to permit AFA representatives Collins and Matallana to participate in the grievance appeal process of certain Flight Attendant discipline, United Airlines has interfered with, influenced, and/or coerced and is interfering with, influencing, and/or coercing Flight Attendants in the exercise of

9

their right to designate representatives of their choosing, all in violation of Section 2, Third of the RLA, 45 U.S.C. § 152, Third.

35.     The actions of United Airlines referenced herein were motivated by anti-union animus and taken for the purpose of impairing the ability of the AFA and its members to function and freely associate, to destroy support for the AFA, to weaken the AFA, and ultimately to destroy it.

**COUNT TWO – VIOLATION OF RLA SECTION 2, FOURTH, 45 U.S.C. § 152, FOURTH**

36.     The AFA incorporates by reference paragraphs 1-35 as if restated herein.

37.     Section 2, Ninth of the RLA, 45 U.S.C. § 152, Ninth governs the identify and certification of bargaining representatives at RLA-covered air carriers. It provides in part that:

> [I]t shall be the duty of the National Mediation Board … to certify … [the] organizations that have been designated and authorized to represent the employees … and certify the same to the carrier … Upon receipt of such certification the carrier *shall treat with the representative so certified* as the representative of the craft or class for the purposes of this chapter. (emphasis added).

38.     Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth, governs employees' rights to organize and prohibits carriers from interfering with that right. It provides in part that:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing … No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees … to influence or coerce employees in an effort to induce them … not to join or remain members of any labor organization …

39.     By investigating and threatening with discipline AFA representatives Collins and Matallana for engaging in protected representational activity, by demanding the disclosure of communications between Flight Attendants and their AFA representatives regarding representational matters under threat of discipline or other reprisal, by refusing to permit AFA

10

representatives Collins and Matallana to participate in the grievance appeal process of certain Flight Attendant discipline, and by refusing to treat with them as AFA representatives, United Airlines has interfered with and is interfering with the organization of its Flight Attendants, influenced and/or coerced and is influencing and/or coercing Flight Attendants in an effort to induce them not to join or remain members of the Union, and interfered with and is interfering with the right of Flight Attendants to freely participate in protected activity under the RLA, all in violation of Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth.

40.     The actions of United Airlines referenced herein were motivated by anti-union animus and taken for the purpose of impairing the ability of the AFA and its members to function and freely associate, to destroy support for the AFA, to weaken the AFA, and ultimately to destroy it.

### PRAYER FOR RELIEF

WHEREFORE, the AFA respectfully requests that this Court grant the following relief:

A.     Enter an Order directing Defendant to immediately cease and desist from its violations of Section 2, Third and Fourth of the RLA, and enjoining Defendant from further violations of the RLA;

B.     Enter an Order directing the cessation of Defendant's bad faith investigations of AFA representatives Jill Collins and Donna Matallana for conduct undertaken in their capacities as AFA representatives;

C.     Enter an Order directing Defendant to abstain from disciplining or threatening with discipline AFA representatives Jill Collins and Donna Matallana for conduct undertaken in their capacities as AFA representatives;

D.      Enter an Order directing Defendant to treat with AFA representatives Jill Collins and Donna Matallana in the representation of United Flight Attendants for any and all lawful purposes;

E.      Enter an Order directing Defendant to cease and to abstain from the interrogating of Flight Attendants regarding their communications with LEC President Jill Collins and/or other AFA representatives regarding matters of Union representation.

F.      Enter an Order declaring that Defendant's conduct, including the investigation of, threats of discipline to, demands for disclosure of communications with Flight Attendants regarding representational matters to, and refusal to treat with AFA representatives Jill Collins and Donna Matallana violates Section 2, Third and Fourth of the RLA;

G.      Enter an Order directing Defendant to conspicuously post copies of this Court's order at United Flight Attendant bases in locations used by United Flight Attendants for a period of one-hundred eighty days; and

H.      Provide such other and further relief including damages, attorneys' fees, and costs that the Court may deem just and proper.

Dated: June 22, 2021

Respectfully submitted,

Jeffrey A. Bartos, D.C. Bar No. 435832
John J. Grunert, D.C. Bar No. 1019791
Guerrieri, Bartos & Roma, PC
1900 M Street, N.W. Suite 700
Washington, DC 20036
202-624-7400
202-624-7420 (Fax)
jbartos@geclaw.com
jgrunert@geclaw.com

*Counsel for Plaintiff AFA*

13