UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>*Defendant.* | No. 21-cv-01674 (DLF) |

## MEMORANDUM OPINION

The Association of Flight Attendants (AFA) brings this case to enjoin a purported violation of the Railway Labor Act (RLA), Pub. L. No. 257, 44 Stat. 577 (1926) (codified at 45 U.S.C. § 151 *et seq.*), by defendant United Airlines (United). *See generally* Compl., Dkt. 1. Before the Court is the defendant's Motion to Dismiss Plaintiff's Complaint Under Rule 12(b)(1), or in the Alternative Rule 12(b)(6), Dkt. 10. The Court lacks jurisdiction over the parties' dispute because it is a "minor dispute" under the RLA, subject to the grievance and arbitration procedures set forth in the parties' collective bargaining agreement (CBA). Accordingly, the Court will grant United's motion under Rule 12(b)(1).

## I.     BACKGROUND

### A.     Factual Background[1]

AFA is a union that represents flight attendants across the country, including those employed by United Airlines. Compl. ¶ 6. AFA and United are parties to a CBA which "governs the terms and conditions of Flight Attendant employment and provides a process for company investigation and discipline of Flight Attendants." Compl. ¶ 8; *see also* Def.'s Mot. to Dismiss Ex. 2 (2016–2021 Flight Attendants Agreement (CBA), Ex. 1 to Decl. of Robert T. Krabbe), Dkt. 10-3 (providing relevant CBA sections). This includes a flight attendant's right to union representation throughout this process. Compl. ¶ 8.

The events that lead to this case began in September 2020 when one flight attendant, Flight Attendant A,[2] "reported to management that he believed one or more of his co-workers had not abided by certain Company policies and United began an investigation of the matter." Compl. ¶ 17. Specifically, Flight Attendant A alleged that two other United flight attendants (Flight Attendants B and C) violated the airline's mask wearing policies on a trip between Washington Dulles and London Heathrow. Def.'s Mot. to Dismiss Ex. 1 (Krabbe Decl.) ¶¶ 10–11, Dkt. 10-2. In October 2020, United issued Performance Warnings to Flight Attendants B and C for their alleged misconduct. Compl. ¶ 18.

Jill Collins and Donna Matallana, United flight attendants and locally based union representatives responsible for "enforcing the CBA and representing employees," *id.* ¶¶ 14, 16,

---

[1] On a motion to dismiss, a court can look beyond the allegations of the complaint to assess its own jurisdiction. *See Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003). Accordingly, these undisputed facts are drawn from the complaint and declarations submitted by both parties.

[2] Consistent with the parties' briefs, the Court refers to all flight attendants by letter except for Collins and Matallana whom the parties refer to by name.

2

represented Flight Attendants B and C in the investigation and disciplinary proceedings, *id.* ¶ 19. As union representatives, Collins and Matallana, among other things, contested United's investigatory findings, conducted interviews, collected witness statements, and gathered information, *see id.* ¶¶ 19–20; Krabbe Decl. ¶¶ 12–13.

In a March 2021 appeal hearing before United Senior Base Manager Janene Bell, Collins and Matallana presented evidence on behalf of Flight Attendant B that Bell refused to take into account. Compl. ¶¶ 21–22. This evidence included "multiple statements by flight attendants alleging misconduct by Flight Attendant A on different flights." Krabbe Decl. ¶ 13; *see id.* ¶ 14. Bell refused to consider the evidence because she deemed it irrelevant to the allegations relating to Flight Attendant B. *See id.* ¶¶ 13–16; Decl. of Jill Collins ¶ 16, Dkt. 5-4; Decl. of Donna Matallana ¶ 9, Dkt. 5-3.

Subsequently, and as a result of the allegations of misconduct, United initiated an investigation of Flight Attendant A. *See* Krabbe Decl. ¶ 16. United claims that it was unable to substantiate the allegations and concluded that "some of the most serious allegations that Ms. Matallana and Ms. Collin[s] presented against Flight Attendant A at Flight Attendant B's appeal hearing were demonstrably false." *Id.*; *see also id.* ¶ 17 (discussing one written statement by Flight Attendant D); *id.* ¶ 19 (same by Flight Attendant E). United also learned that Flight Attendants D and E received related communications from Collins or Matallana. *See id.* ¶¶ 18–19.

During this time period, Flight Attendant A filed a second complaint, alleging that the flight attendants who had falsely accused him of misconduct were retaliating against him for notifying United of Flight Attendant B's failure to comply with the airline's mask policy. *Id.* ¶ 21. United initiated another investigation, *see id.*, and in the course of that investigation,

3

interviewed a number of local flight attendants, Compl. ¶ 24; Krabbe Decl. ¶ 21.  As a result of this investigation, United terminated nine flight attendants, including Flight Attendants D and E, for their dishonesty.  *See* Krabbe Decl. ¶¶ 23–25.  United also informed AFA that it was looking into the manner in which "Collins and Matallana conducted their Union investigations."  Compl. ¶ 25.  According to United, the terminated flight attendants indicated that Collins and Matallana solicited the false reports that they attempted to submit as evidence in Flight Attendant A's disciplinary hearing.  Krabbe Decl. ¶ 25.  Collins and Matallana do not deny that they collected and presented the witness statements that formed the basis for the retaliation claim, *see* Collins Decl. ¶¶ 14–17, 19; Matallana Decl. ¶¶ 7–11, 13, but they deny that they violated United's policy against retaliation, *see* Collins Decl. ¶ 19; Matallana Decl. ¶ 10.

In June 2021, United sent AFA a list of questions for Collins and Matallana.  Compl. ¶ 29; Krabbe Decl. ¶ 28.  The airline wanted to know to whom the union representatives had spoken in their investigation; what they asked the interviewees; and why they did so.  Compl. ¶ 29; Krabbe Decl. ¶ 28.  AFA refused to allow Collins and Matallana answer United's questions because it claimed they were "directed solely to [Collins's and Matallana's] actions in their capacity as Union representatives" and were an "attempt[] to illegally solicit the Union's defense strategy and confidential and protected internal union-member communication in violation of the RLA."  Compl. ¶ 30; *see* Krabbe Decl. ¶ 29.

Nonetheless, United proceeded with its investigation of Collins and Matallana, and on June 22, 2021, issued Letters of Investigation for "their conduct during and related to the matter in which they served as union representatives defending a United Flight Attendant from discipline."  Compl. ¶ 31; *see* Krabbe Decl. ¶¶ 30–31.  Consistent with United's policy of "not permit[ting] fact witnesses to remain in the interview room when another fact witness is being

4

interviewed," United also barred Collins and Matallana from being present for certain disciplinary hearings involving flight attendants from whom the union representatives had obtained information during the course of their representation of Flight Attendants B and C. Krabbe Decl. ¶ 22; *see* Collins Decl. ¶¶ 20–22; Matallana Decl. ¶¶ 11–12.  Both union representatives continue to refuse to cooperate in the investigation.  Collins Decl. ¶ 28; Matallana Decl. ¶ 14.

> **B.**     **Procedural History**

AFA brought this case on June 22, 2021, alleging that United had violated two sections of the Railway Labor Act.  *See generally* Compl.  The union claims that the airline's investigation of Collins and Matallana violates RLA § 2, Third, by "interfering with, influencing, and/or coercing Flight Attendants in the exercise of their right to designate representatives of their choosing."  Compl. ¶ 34 (citing 45 U.S.C. § 152, Third).  The union further claims that the airline's investigation of Collins and Matallana violates RLA § 2, Fourth, by "interfering with the organization of its Flight Attendants, . . . influencing and/or coercing Flight Attendants in an effort to induce them not to join or remain members of the Union, and . . . interfering with the right of Flight Attendants to freely participate in protected activity under the RLA."  Comp. ¶ 39 (citing 45 U.S.C. § 152, Fourth).  Finally, AFA alleges that United's actions "were motivated by anti-union animus and taken for the purpose of . . . weaken[ing] . . .and ultimately . . . destroy[ing]" the union.  Compl. ¶ 40.

On June 23, 2021, AFA moved for a temporary restraining order (TRO) and a preliminary injunction, Dkt. 5, and then promptly withdrew its request for a TRO, Notice of Withdrawal of Req. for TRO, Dkt. 6.  Subsequently, the parties requested that the Court defer ruling on the motion for a preliminary injunction pending resolution of United's dispositive

motion.  *See* Joint Proposed Schedule, Dkt. 9.  United's motion to dismiss is now ripe for resolution.

## II.  LEGAL STANDARD

Under Rule 12(b)(1), a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction."  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  "Federal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994), and it is "presumed that a cause lies outside this limited jurisdiction."  *Id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799)).  Thus, to survive a Rule 12(b)(1) motion, the plaintiff must demonstrate that the court has jurisdiction by a preponderance of the evidence.  *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

The RLA, which applies to the airline industry pursuant to 45 U.S.C. §§ 181–88, *see Int'l Ass'n of Machinists, AFL-CIO v. Cent. Airlines, Inc.*, 372 U.S. 682, 685–89 (1983), alters the traditional jurisdictional inquiry.  The Act categorizes disputes as either "major" or "minor."  *See Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n* (*Conrail*), 491 U.S. 299, 302 (1989).  And it grants federal courts jurisdiction to resolve major disputes, while minor disputes must be submitted to arbitration.  *Am. Train Dispatchers Ass'n v. Nat'l Ry. Labor Conference*, 525 F. Supp. 3d 107, 111 (D.D.C. 2021) (citing *Ass'n of Flight Attendants, AFL-CIO v. United Airlines, Inc.*, 71 F.3d 915, 917 (D.C. Cir. 1995); *Conrail*, 491 U.S. at 302–03).  "Major" disputes are "dispute[s] over the formation of a collective bargaining agreement or efforts to change the terms of one," while "minor" disputes are those "that 'contemplate[] the existence of a collective agreement' and 'relate[] either to the meaning or proper application of a particular provision with

reference to a specific situation or to an omitted case." *Air Line Pilots Ass'n, Int'l v. E. Air Lines, Inc.*, 869 F.2d 1518, 1520 (D.C. Cir. 1989) (quoting *Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945), *adhered to on reh'g*, 327 U.S. 661 (1946)). "[I]f there is any doubt as to whether a dispute is major or minor a court will construe the dispute to be minor." *Air Line Pilots*, 869 F.2d at 1521 (quoting *Ry. Labor Exec. Ass'n v. Norfolk & W. Ry. Co.*, 833 F.2d 700, 705 (7th Cir. 1987)). Accordingly, as the party invoking federal jurisdiction, a plaintiff bears a heavy burden in demonstrating that a federal court can hear a case.

A court that lacks jurisdiction must dismiss the action. Fed. R. Civ. P. 12(b)(1), (h)(3). In resolving a motion to dismiss, a court generally must treat the plaintiff's "factual allegations as true and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Ctr. for Responsible Sci. v. Gottlieb*, 311 F. Supp. 3d 5, 8 (D.D.C. 2018) (cleaned up), but two exceptions apply here. First, a "court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts" when resolving its own jurisdiction. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). Second, for the reasons discussed above, a "court must 'look beyond the complaint to the arguments of the party asserting a contractual basis for the disputed action'" when resolving jurisdiction for claims brought under the RLA. *Am. Train Dispatchers*, 525 F. Supp. 3d at 112 (quoting *Bhd. of Maint. of Way Emps. Div./IBT v. Nat'l R.R. Passenger Corp.*, 217 F. Supp. 3d 249, 256 (D.D.C. 2016)).

AFA argues that the jurisdictional facts overlap with the merits and thus the Court should postpone a determination of jurisdiction until after discovery. *See* Pl.'s Mem. in Opp'n to Mot. to Dismiss at 14, Dkt. 11. But AFA does not dispute any of United's alleged facts, only how

United characterizes those facts. Therefore, the Court will resolve the jurisdictional challenge raised in the motion.

## III.     ANALYSIS

This dispute stems from United's investigation of alleged retaliatory acts by union representatives and other flight attendants. *See* Compl. ¶¶ 17–27. As a result of this investigation, United terminated nine flight attendants. United also sought to interview union representatives Collins and Matallana, *see* Krabbe Decl. ¶ 25; Collins Decl. ¶ 27; Matallana Decl. ¶ 13; issued Letters of Investigation to the union representatives, *see* Collins Decl. ¶¶ 22–23, 27; Matallana Decl. ¶¶ 11, 13; Krabbe Decl. ¶ 25; and banned them from attending certain disciplinary hearings related to the retaliation investigation. *See* Collins Decl. ¶¶ 22–23, 27; Matallana Decl. ¶¶ 11, 13; Krabbe Decl. ¶ 22. Collins and Matallana admit that they coordinated and offered the witness statements that formed the basis of the retaliation claim, *see* Collins Decl. ¶¶ 14–17, 19; Matallana Decl. ¶¶ 7–11, 13, but they deny that they engaged in retaliation, *see* Collins Decl. ¶ 19; Matallana Decl. ¶ 10.

AFA raises three objections to United's investigation of Collins and Matallana. First, the union challenges United's attempt to investigate and discipline the union representatives "for conduct undertaken in their capacities as AFA representatives." Compl. 11. Second, the union challenges the "bad faith" motivation behind the investigation. *Id.* And third, it challenges the method of investigation—requesting "disclosure of communications" between the union representatives and the other flight attendants. *Id.* at 12.

Before the Court can address the merits of the parties' dispute, it must first determine whether it has jurisdiction under the RLA. As noted, the RLA differentiates between "major" and "minor" disputes and divests federal courts of jurisdiction over "minor" disputes in favor of

arbitration before the Systems Board of Adjustment. *See Air Line Pilots Ass'n, Int'l v. E. Air Lines, Inc.*, 863 F.2d 891, 895–96 (D.C. Cir. 1988); 45 U.S.C. § 184. "Major" disputes are "dispute[s] over the formation of a collective bargaining agreement or efforts to change the terms of one." *Air Line Pilots Ass'n*, 869 F.2d at 1520 (quoting *Burley*, 325 U.S. at 723). "Minor" disputes are those "that 'contemplate[] the existence of a collective bargaining agreement' and 'relate[] either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case." *Id*. In determining whether a dispute is minor, "[t]he court does not consider the merits of the underlying dispute; its role is limited to determining whether the dispute can be characterized as involving the proper application or meaning of a contract provision." *Air Line Pilots*, 869 F.2d at 1521 (quoting *Ry. Labor Exec. Ass'n*, 833 F.2d at 704) (alteration in original). Thus, the Court does not ask whether "one party's interpretation of the contract lacks merit," but "only whether the dispute '*on its face* is governed by the contract.'" *Id.* (quoting *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960)) (emphasis added).

Section 23 of the parties' CBA details a process for investigating and disciplining flight attendants for violations of company policy. As relevant here, the CBA grants United the right to investigate "other incidents or charges" of which it becomes aware during any investigatory meeting. *Id.* § 23(A)(4). The CBA also sets out the exact procedures for the resolution of grievances. *See id.* § 23(C). It grants flight attendants the right to union representation, *id.* § 23(A)(1)–(2), and the right to present evidence in disciplinary proceedings, *id*. Union representatives include the local president and its designees. *Id.* § 23(B)(1).

United's actions—seeking to interview Collins and Matallana and bar them from certain disciplinary proceedings—are neither expressly permitted nor forbidden by the CBA. Even so,

9

the CBA grants United broad authority to investigate and discipline its flight attendants, and the airline issued the Letters of Investigation to Collins and Matallana pursuant to § 23(A)(2) of the CBA.  Thus, the CBA plainly governs the dispute over the actions United took here.

Under the RLA, a dispute is minor if it "is *arguably justified* by the terms of the parties' collective-bargaining agreement."  *Conrail*, 491 U.S. at 307 (emphasis added); *see also Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 928 F.3d 1102, 1108 (D.C. Cir. 2019).  Because this dispute "relates either to the meaning or proper application of a particular provision [of the CBA] with reference to a specific situation *or to an omitted case*," *Conrail*, 491 U.S. at 303 (quotation omitted) (emphasis added), it is subject to the "mandatory, exclusive and comprehensive" jurisdiction of the CBA's grievance procedures, *Oakey v. U.S. Airways Pilots Disability Income Plan*, 723 F.3d 227, 230 (D.C. Cir. 2013) (quoting *Air Line Pilots Ass'n , Int'l v. Delta Air Lines, Inc.*, 863 F.2d 87, 88 (D.C. Cir. 1988)); *see also Air Line Pilots*, 869 F.2d at 1521.  Even though the CBA does not specifically address the investigation and discipline of flight attendants who also serve as union representatives, the dispute at issue is "an omitted case," arguably justified and governed by § 23 of the CBA.

AFA's arguments to the contrary do not persuade.  The union contends that the RLA's withdrawal of jurisdiction over minor disputes is inapplicable here because the union raises statutory claims under the RLA, not claims under the CBA.  *See* Pl.'s Opp'n at 8–14.  But the *Conrail* test does not turn on a whether a statutory claim exists.  *Conrail*, 491 U.S. at 305; *see also Bhd. of Maintenance of Way Emps. v. Union Pacific R.R. Co.*, 358 F.3d 453, 457 (7th Cir. 2004) (dismissing a statutory claim as a "minor" dispute subject to mandatory arbitration).  Nor does it matter which section of the RLA applies.  *See Am. Train Dispatchers*, 525 F. Supp. 3d at 112 ("[U]nder *Conrail*, courts do not first decide whether Section 3 of the RLA applies.").  What

matters is whether the contested action relates to, or "'is arguably justified by the terms of the parties' [CBA].'" *Atlas Air*, 928 F.3d at 1108 (quoting *Conrail*, 491 U.S. at 307). All disputes that are go to arbitration. *Cf. Conrail*, 491 U.S. at 309–10 (rejecting an attempt to create a "third category of hybrid disputes," *id.* at 310). Here, there is no colorable argument that the actions United took in its investigation of Collins and Matallana are not related to or "arguably justified" by § 23 of the CBA, which provides for employee discipline. "[F]ederal courts should be particularly wary of finding jurisdiction when the carrier plausibly understands a CBA to permit its conduct." *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pacific R.R. Co.*, 879 F.3d 754, 760 (7th Cir. 2017).

Although it is true, as the union notes, *see* Pl.'s Opp'n at 11–12, that this court has found jurisdiction for "violations of" the "specific statutory sections under the RLA" at issue here— "Section 2 Third [and] Fourth," *Held v. Am. Airlines, Inc.*, 13 F. Supp. 2d 20, 24 (D.D.C. 1998), it did so in only limited circumstances not present here. As the Supreme Court has explained, RLA § 2, Third and Fourth, "address[] primarily the precertification rights and freedoms of unorganized employees." *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants* (*TWA*), 489 U.S. 426, 440 (1989). "[J]udicial intervention in RLA procedures [is] limited to those cases where 'but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands'" of the RLA. *Id.* at 441 (quoting *Switchmen's v. Nat'l Mediation Bd.*, 320 U.S. 297, 300 (1943)); *see also U.S. Airlines Pilots Ass'n ex rel. Cleary v. U.S. Airways, Inc.*, 859 F. Supp. 2d 283, 305 (E.D.N.Y. 2012) (applying the major-minor dispute framework to statutory claims and concluding there was not jurisdiction).

The D.C. Circuit has yet to address what those limited cases are, but other circuits have converged on a test that governs post-certification federal court jurisdiction over RLA § 2, Third

11

and Fourth. *See United Transp. Union v. Nat'l R.R. Passenger Corp.* (*Amtrak*), 588 F.3d 805 (2d Cir. 2009); *Local Union 2000, Int'l Bhd. of Teamsters, AFL-CIO v. Nw. Airlines, Inc.*, 21 F. Supp. 2d 751, 756 (E.D. Mich. 1998) (collecting cases). And the parties agree that this test applies here. *See* Def.'s Mem. at 14; Pl.'s Opp'n at 12. "[D]irect judicial intervention is warranted" in "three specific circumstances . . . : 'where it is clear that the employer's conduct [1] has been motivated by anti-union animus or an attempt to interfere with its employees' choice of their collective bargaining representative, or [2] constitutes discrimination or coercion against that representative, or [3] involves acts of intimidation which cannot be remedied by administrative means.'" *Amtrak*, 588 F.3d at 813 (quoting *Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.*, 789 F.2d 139, 142 (2d Cir. 1986)); *see also Nat'l R.R. Passenger Corp. v. Int'l Ass'n of Machinists and Aerospace Workers* (*IAM*), 915 F.2d 43, 51 (1st Cir. 1990). Where, as here, a case involves disciplinary actions against union representatives, the first two factors necessarily merge into a single inquiry—whether the United's actions were motivated by anti-union animus or an attempt to interfere with its employees' choice of their collective bargaining representative. The burden is on the plaintiff to show "anti-union animus was a substantial or motivating factor in the defendant's actions." *Held*, 13 F. Supp. 2d at 26 (citing *E. Air Lines*, 863 F.2d at 902).

      The union argues that United's actions show anti-union animus and an attempt to interfere with the designation of Collins and Matallana as union representatives. *See* Compl. ¶¶ 21–27. But as the First Circuit has noted, "the disciplinary investigation of . . . [u]nion representatives" alone "does not approach the kind of extraordinary anti-union animus" necessary for federal court jurisdiction over post-certification claims under RLA § 2, Third and Fourth. *IAM*, 915 F.3d at 53. Within the context of the airline's entire investigation of the

alleged retaliation, it is clear that United treated all twelve flight attendants who were under investigation in the same manner.  *See* Krabbe Decl. ¶¶ 21–22.  *Cf. E. Air Lines*, 863 F.2d at 902–03 (considering whether company's actions treated union employees differently than non-union ones).  United issued Letters of Investigation to all twelve flight attendants—Collins and Matallana, as well as "ten flight attendants who d[id] not serve as Union representatives." Krabbe Decl. ¶ 21.  Moreover, United explained its reason for preventing Collins and Matallana from attending certain disciplinary hearings of flight attendants: to comply with the airline's universal policy that fact witnesses cannot "remain in the interview room when another fact witness is being interviewed."  Krabbe Decl. ¶ 22.  The fact that United permitted *other* union representatives to attend those hearings, *see* Compl. ¶ 28 (referring to having "out-of-state Councils . . . provide representation"), supports the airline's claim that it barred Collins and Matallana from attending the hearings to enforce its witness policy, rather than because of any anti-union animus.  *See Amtrak*, 588 F.3d at 814 (explaining that "the term 'representative,' as used in the RLA, refers to a union or other organization designated to represent an employee, and not merely to an individual official").  For these reasons, this case is unlike *Held*, where "the plaintiffs . . . provided sufficient proof to raise the inference that anti-union animus was a substantial or motivating factor behind the challenged decision."  13 F. Supp. 2d at 26.

AFA concedes that "'[d]iscrimination' as such is not alleged" in this case, Pl.'s Opp'n at 18, yet the union seeks to recast these facts as an attempt to "censor" or "chill[]" communications between flight attendants and union representatives, *id.* at 13.  The union further argues that the fact that the airline's investigation related to Collins and Matallana's union representational duties *necessarily* makes United's actions interference with union representation.  *See id.* at 16.  But there are two problems with AFA's theory.

13

First, on the facts of this case, United has plausibly alleged, and AFA does not dispute, that Collins and Matallana took part in conversations that gave rise to United's retaliation investigation. Both Collins and Matallana vigorously dispute that they violated United anti-retaliation policy, *see* Collins Decl. ¶ 19; Matallana Decl. ¶ 10, but that goes to the underlying merits of the controversy, not the nature of United's alleged retaliation investigation. *See Air Line Pilots*, 869 F.2d at 1521 (courts do not consider the merits of a dispute in determining whether it is minor). And to the extent that Collins and Matallana claim not to be fact witnesses, *see* Matallana Decl. ¶¶ 5, 11; Collins Decl. ¶¶ 7, 20, they seem to conflate the first investigation—alleged violations of United's mask policy—with its second—alleged violations of United's anti-retaliation policy, *see* Krabbe Decl. ¶ 10. United asserts that Collins and Matallana are fact witnesses in the second investigation only, and neither of the union representative presents any evidence to rebut this allegation. In fact, they both admit to collecting the witness statements that underlie United's retaliation investigation. *See* Collins Decl. ¶¶ 14, 19–20; Matallana Decl. ¶¶ 7, 10–11, 13.

Second, the union's position would provide union representatives with complete immunity from discipline for acts in violation of the CBA so long as those violations took place while conducting union duties. That is to say, the union's position would permit union representatives to retaliate against flight attendants who take disfavored actions and coordinate that retaliation while representing other flight attendants being investigated for the same retaliation. The RLA does not provide for that kind of "'cloak of immunity' for the misconduct of . . . employees functioning in a representative capacity." *Amtrak*, 588 F.3d at 814.

Finally, to the extent United's investigation of union representatives Collins and Matallana could be deemed an act of intimidation, as AFA claims, *see* Pl.'s Opp'n at 12–13,

14

there is an administrative remedy available to address such allegations—arbitration before the Systems Board of Adjustment.  *See Oakey*, 723 F.3d at 232; 45 U.S.C. § 184.  This remedy is explicitly provided for in the parties' CBA.  *See* CBA § 24.  And even if Collins and Matallana are subject to disciplinary action short of termination, *see* Pl.'s Opp'n at 13 n.6, the CBA provides for multiple avenues for review, *see* CBA § 23(C)(3), (E)(4), (H)(1)(g).  Thus, the unavailability prong of *Amtrak* is also not met here.

In sum, the dispute between the AFA and United is a "minor dispute" subject to the grievance and arbitration procedures set forth in the CBA.  Therefore, this Court lacks jurisdiction under the RLA.

## CONCLUSION

For the foregoing reasons, the Court grants United's motion to dismiss for lack of jurisdiction.  A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

January 27, 2022